## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | No. 4:17-CR-00291 |
|---|---|
| | (Judge Brann) |
| v. | |
| NATHAN CROWDER, | |
| Defendant. | |

## MEMORANDUM OPINION

### FEBRUARY 28, 2019

## I.    BACKGROUND

Defendant Nathan Crowder has been charged with one count of conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846, one count of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), and five counts of possession with intent to distribute/distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).[1]

Crowder filed a Motion to Suppress heroin discovered during a traffic stop.[2] An evidentiary hearing was held on February 25, 2019.  The motion, now ripe for disposition, is denied as discussed below in this Memorandum Opinion.

---

[1]    ECF No. 46.

[2]    ECF No. 132.

## II.    DISCUSSION

Crowder and his girlfriend were stopped by Pennsylvania State Police Troopers for speeding on Interstate 80 in Luzerne County, Pennsylvania in the early morning hours of January 31, 2017.  After detecting the strong odor of marijuana, the vehicle was searched, and the 252 bags of heroin recovered.

Crowder filed this motion to suppress on five bases.  He argues that

[1.] The stop and seizure of the vehicle was not supported by reasonable suspicion or probable cause that a motor vehicle violation had occurred.

[2.] The stop based upon a purported speeding violation of 7 miles over [the speed limit] determined based upon a speedometer from the police vehicle that was either did not meet the accuracy certification requirements, the speed was not timed for the requisite distance of three-tenths of a mile, and/or otherwise did not satisfy the requirements of 75 Pa. C.S.A. § 3368.

[3.] The continued detention of Mr. Crowder and the driver following the resolution of the motor vehicle violation constituted a seizure or detention without the requisite probable cause or reasonable suspicion[.] and,

[4.] [T]he search of the vehicle based solely upon the smell of marijuana, smoked earlier in the day, was insufficient to establish probable cause.

[5.] As a result of the foregoing, all the evidence seized and derivative evidence must be suppressed as fruits of an illegal seizure and search. [3]

---

[3]    ECF No. 132 at 4-5.

## A.      Facts elicited at the Suppression Hearing

Pennsylvania State Police ("PSP") Troopers, Daniel Spath ("Spath") and Jonathan Bailey ("Bailey) both testified, credibly, at the evidentiary hearing. Spath and Bailey were working the overnight shift together on routine patrol in a marked police vehicle on Interstate 80 in Butler Township, Luzerne County. Both were in full PSP Trooper uniform at the time of the traffic stop.

Spath and Bailey testified that they stopped a Buick SUV for travelling at 72 miles per hour in a 65 mile per hour speed zone. Bailey further testified that it was dark and that he and Spath were following the Buick at a distance of about four or five car lengths behind, so they had no way to determine who was in the vehicle or how many people were in the vehicle.

Prior to the traffic stop, the Troopers activated the dashboard camera, sirens, and lights on the patrol vehicle. The Buick SUV was pulled over at the off ramp for Exit 262. Spath testified that this is a safe location to conduct a traffic stop because it has a wider shoulder area. Despite this wide berth for parking, Spath testified, and the video recording duly corroborated, that the vehicle's operator, Shantish Codie, Defendant Crowder's girlfriend, pulled the vehicle over so that the driver's side wheels were just outside the white line of Interstate 80. On the video, it is evident that Spath, as makes contact with Codie at the driver's side window, is standing on Interstate 80 itself in the lane of the off-ramp. The video evidences at least one vehicle drive close to where Spath is standing on the exit ramp.

Spath testified that as Codie rolled down her window he was immediately "overcome by the strong odor of marijuana emanating from the vehicle at that point in time." He asked Codie for her driver's license, insurance, and registration. He then asked her to exit the vehicle and stand on the passenger side of the patrol vehicle as he re-entered the patrol vehicle to 'run' her information. Spath further testified that he always asks drivers to step out of their vehicle, even for a simple speeding violation, for both his and the driver's safety. On the video, Codie is seen exiting the vehicle then zipping and buttoning her previously unzipped and unbuttoned jeans.

Spath asked Codie why the vehicle smelled like marijuana and she admitted to having smoked marijuana in the vehicle earlier in the day. She also agreed with Spath that the interior of the vehicle smelled like marijuana.

While Spath was speaking with Codie, Bailey made contact with Crowder who was in the passenger seat of the Buick. Bailey testified that Crowder had the seat reclined and that his eyes were shut; Bailey had to knock on the window a few times before Crowder opened it. Bailey testified similarly to Spath that when Crowder opened the window, Bailey smelled "the strong odor of marijuana emanating from the vehicle." Crowder did not produce a driver's license and instead simply provided Bailey with his name and date of birth. Bailey in turn provided Crowder's information to Spath to 'run.'

Codie's information returned with no issues, but when Spath ran Crowder's name and date of birth in the Commonwealth Law Enforcement Assistance Network "CLEAN" and in the FBI's National Crime Information Center "NCIC" systems, Spath discovered that there was an active Lycoming County warrant[4] for Crowder and that Crowder had an extensive criminal history.

The Troopers testified that they then placed Crowder and Codie in handcuffs[5] and sat the duo in the patrol vehicle after which Spath searched the Buick SUV. Spath searched Crowder's coat found on the backseat of the Buick and recovered 18 bundles of heroin. He also found a small amount of marijuana in Codie's purse, also located in the vehicle.

### B.    Burden of Proof

"The burden of proof is on the defendant who seeks to suppress evidence."[6] If the Defendant establishes a valid basis for his motion, the burden shifts to the Government to show that the search and seizure fit within an established exception to the warrant requirement.[7]

---

[4]    Neither Trooper could recall if it was a bench or arrest warrant.

[5]    Spath testified that individuals are routinely placed in handcuffs while one officer conducts an automobile search because the troopers don't want to be outnumbered by the side of the road. He further explained that individuals may try to fight with the troopers, get back in the vehicle, or even run out onto the Interstate. He explained that handcuffing is for everyone's safety.

[6]    *United States v. Benoit*, 730 F.3d 280, 288 (3d Cir. 2013) (*quoting United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (internal quotation marks omitted)).

[7]    *See, e.g. United States v. Herrold,* 962 F.2d 1131, 1137 (3d Cir. 1992).

### C.   Probable Cause and/or Reasonable Suspicion of a Traffic Violation and the requirements of 75 Pa. C.S.A. §3362 and 3368

The late Justice Antonin Scalia writing for a unanimous United States Supreme Court in *Whren v. United States*, explained that "an automobile stop is [] subject to the constitutional imperative that it not be 'unreasonable' under the circumstances."[8]  "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."[9]

The United States Court of Appeals for the Third Circuit has further expounded on this principle, stating that "in *Whren v. United States,* the Supreme Court established a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime."[10]  *Whren* stated "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and made it patently clear that the Court's prior precedent "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."[11]

---

[8]   517 U.S. 806, 810 (1996).

[9]   *Id.* (internal citations omitted).

[10]   *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (Fisher, J.).

[11]   *Whren* at 813.

Here, Crowder argues that there was no traffic violation because there was no violation of the 'Exceeding Maximum Speed' statute, found at 75 Pa.C.S.A. § 3362. That section of the Pennsylvania Vehicle Code states: "no person shall drive a vehicle at a speed in excess of the following maximum limits…65 miles per hour for all vehicles on freeways where the department has posted a…65-miles-per-hour speed limit."[12]

In addition, Crowder argues that if the vehicle was clocked by the troopers vehicle speedometer, than it must comply with Section 3363 of Chapter 75 of the Pennsylvania Code, which states "(a) Speedometers authorized.--The rate of speed of any vehicle may be timed on any highway by a police officer using a motor vehicle equipped with a speedometer. In ascertaining the speed of a vehicle by the use of a speedometer, the speed shall be timed for a distance of not less than three-tenths of a mile."[13]

Bailey testified that he followed the Buick SUV for at least three-tenths of a mile, but possibly for as much as four or five-tenths of a mile, using the calibrated and certified speedometer of the patrol vehicle. This calibrated and certified speedometer demonstrated that the Buick was travelling at a rate of speed of seventy-two miles per hour in a zone posted with a sixty-five mile per hour speed

---

[12]  75 Pa.C.S.A. § 3363(a)(1.1).

[13]  75 Pa.C.S.A. § 3368(a).

limit. Bailey testified that he was not aware if there is a margin of error on the calibration.

Spath corroborated Bailey's testimony that the duo followed Codie and Crowder's vehicle for at least three-tenths of a mile and determined that it was speeding. Because both officers testified credibly, I find that there was probable cause for a legitimate traffic stop.

### D. Continued Detention

Crowder also argues that he (and Codie) should not have been detained after the initial traffic stop. Crowder describes the odor of marijuana as "old and…innocuous and not indicia of present criminal activity to justify further detention."[14] I respectfully disagree with this olfactory portrayal.

"After a traffic stop that was justified at its inception, an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation."[15] "While reasonable suspicion must be more than an inchoate hunch, the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop."[16] The reasonable suspicion standard affords "great deference to the officer's knowledge of the nature

---

[14] Def. Br. ECF No. 133 at 8.

[15] *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

[16] *Id. (internal quotations omitted).*

and the nuances of the type of criminal activity that he had observed in his experience, almost to the point of permitting it to be the focal point of the analysis."[17]

Spath and Bailey both testified that the odor of marijuana was "strong." Spath further elaborated that Codie admitted to having smoked marijuana in the vehicle. Simple possession of marijuana remains illegal under both Pennsylvania and federal law.[18] As such, a reasonable, articulable suspicion of criminal activity existed. There was no Fourth Amendment violation by Crowder's continued detention.

### E.    Search of the Vehicle

A warrant is not required to search a vehicle if law enforcement has probable cause for the search.[19] This concept is commonly referred to as the 'automobile exception.' "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts."[20] This is a "totality of the circumstances standard."[21] "If probable cause justifies the search of a lawfully

---

[17]    *Id.*

[18]    *See* 35 Pa.C.S.A. § 780-113(a)(31) ("(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: (31) Notwithstanding other subsections of this section, (i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale."); and 21 U.S.C. 841(a) and 844.

[19]    *United States v. Ross,* 456 U.S. 798, 823-4 (1982).

[20]    *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

[21]    *Id.* at 272.

stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."[22]  "The Government has the burden to show the existence of probable cause.[23]

Spath testified that there were numerous indicators of criminal activity so as to justify the search of the Buick SUV.  He testified that the smell of marijuana was "strong" and did not dissipate after Crowder and Codie were removed from the Buick.  He also testified that Codie relayed to him that the couple engaged in a brief trip, as the duo began the day in Williamsport, drove to Philadelphia for a few hours, during which time she was unaware of Crowder's whereabouts.  The couple were returning to Williamsport in the middle of the night when their vehicle was stopped.  Codie would only tell Spath that Crowder was her boyfriend; she would not tell Spath Crowder's last name.

Spath also testified that although most people he pulls over for traffic violations are nervous initially, usually the nervousness alleviates; for Codie it did not.  He believed that she was "overly nervous" and "fidgety" talking about Philadelphia.  He explained that there is a "nexus between the heroin trade between Philadelphia and Williamsport."  Additionally, he testified that Codie "parked suspiciously" by parking on the white line so that he had to stand on the interstate in order to speak with her.  He testified that parking in that way signals to him that

---

[22]  *United States v. Ross*, 456 U.S. 798, 825 (1982).

[23]  *See Wong Sun v. United States,* 371 U.S. 471 (1963).

the driver does not want a state trooper standing at her car window.   In the final analysis, however, Spath testified that he made the decision to search the vehicle the moment he smelled the strong odor of marijuana emanating from the Buick.

On cross examination, Spath would not distinguish between the smell of burnt marijuana as opposed to 'raw,' unsmoked marijuana.  He testified it was not a lingering odor but a strong odor, responding to questioning stating, rather emphatically, "You say linger.  This was a strong odor of marijuana.  Not lingering.  Strong odor."

Based on the totality of the circumstances as described by Spath, I find that there was probable cause for the search of the Buick SUV and it was justified under the automobile exception to the warrant requirement.  Accordingly, Crowder's Fourth Amendment rights were not violated by the search of the automobile.

### F.      Fruit of the Poisonous Tree

"In its broadest sense, the fruit of the poisonous tree doctrine has been regarded as a rule prohibiting the government from using in any manner prejudicial to the accused information derived from facts learned as a result of the unlawful acts of its agents."[24]  Crowder was taken to the Pennsylvania State Police barracks where he ultimately admitted to possession of the heroin found in the vehicle.  He

---

[24]   43 A.L.R.3d 385 (2018) (Gary D. Spivey, J.D.).

now argues that his confession should be suppressed pursuant to the fruit of the poisonous tree doctrine. Because I find that law enforcement acted lawfully, as delineated above, the fruit of the poisonous tree doctrine has no application here.

## III.    CONCLUSION

For the reasons stated above, the motion to suppress is denied. An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge