# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-00291 |
| v. | (Judge Brann) |
| NATHAN CROWDER, MARKEESE ASKEW, WAYNE DAVIDSON, and RAYMOND HOWARD, | |
| Defendants. | |

## MEMORANDUM OPINION

**MARCH 14, 2019**

### I. BACKGROUND

Defendant Nathan Crowder was indicted on September 28, 2017 on one count of conspiracy.[1] A superseding and then a second superseding indictment was subsequently filed on May 24, 2018.[2] The superseding indictments brought three additional defendants into the case, Markeese Askew, Wayne Davidson, and Raymond Howard, together with an additional sixteen counts. All Defendants were charged in Count 1, conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846.

---

[1] ECF No. 1.

[2] ECF No. 46.

Crowder was additionally charged in Count 2, possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); and Counts 3, 7, 11, 12, and 13, all possession with intent to distribute/distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).

Askew was charged in Counts 10, 14 and 17, all possession with intent to distribute/distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1); Count 15 possession with intent to distribute/distribution of fentanyl in violation of 21 U.S.C. § 841(a)(1); and Count 16 possession with intent to distribute/distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1).

Davidson was charged in Counts 4, 5, 6, and 8, all possession with intent to distribute/distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1); and Count 9 possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).

Defendant Crowder filed a Motion for Disclosure of Informants,[3] joined by Defendants Howard[4] and Davidson.[5] The motion, now ripe for disposition, is denied.

---

[3] ECF No. 130.

[4] ECF No. 142.

[5] ECF No. 134.

## II. DISCUSSION

Defendant Crowder requests disclosure of four individuals he describes as confidential informants, all identified in the second superseding indictment by only their initials. The Government categorizes these four pseudonym-identified individuals differently. The Government asserts that the witnesses are neither confidential informants nor confidential human sources acting at the direction of law enforcement, but instead describes these individuals as drug purchasers who the Government intends to call at trial to testify against their suppliers – the Defendants.

Defendant Crowder bases his argument in support of his motion for disclosure on the 1957 Supreme Court case, *Roviaro v. United States*.[6] This seminal case discusses the informer's privilege. *Roviaro* held that "under the circumstances here present, [it] was reversible error" by the District Court which "allowed the Government to refuse to disclose the identity of an undercover employee who had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged."[7]

---

[6] 353 U.S. 53 (1957).

[7] *Id.* at 55.

The *Roviaro* court also explained, "We believe that no fixed rule with respect to disclosure is justifiable."[8] "The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."[9] "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."[10]

On this point, the United States Court of Appeals for the Third Circuit has further elaborated, stating: "the result of the balancing will depend upon the particular circumstances of the case, 'taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'"[11]

Before turning to the substance of Crowder's arguments, I note that I concur with the position of the Government as to the joinder of Defendants, Howard and Davidson.[12] Because these two Defendants did not file briefs in support of their

---

[8] *Id.* at 62.

[9] *Id.*

[10] *Id.*

[11] *United States v. Jiles*, 658 F.2d 194, 196 (3d Cir. 1981) *quoting Roviaro* at 59, and *citing generally* WESTEN, THE COMPULSORY PROCESS CLAUSE, 73 Mich.L.Rev. 71, 161-66 (1974), *see also Mitchell v. Roma*, 265 F.2d 633 (3d Cir. 1959).

[12] The Government only noted in its brief that Davidson had joined (ECF No. 139), but both Defendants Howard and Davidson have joined in this motion. ECF Nos. 142 and 134 respectively.

position, they have not met their initial burden. "Prior to engaging in the *Roviaro* balancing test, the defendant has the burden of setting forth and establishing a specific need for disclosure of the identity of the confidential informant."[13] Defendants Howard and Davidson's blanket joinder of Crowder's motion does not establish the need for disclosure of the identity of the informants, falling short of the *Roviaro* requirements in this regard. The motion is therefore denied as to these two defendants on this basis.

Defendant Crowder, however, has met the initial burden as to this requirement. Crowder is requesting that the Government identify the three individuals referred to in the second superseding indictment only as JJ, JS, BB, and AM.[14] In accordance with *Roviaro*, Crowder has explained that the identity of these witnesses is essential to understand "the informants' unique knowledge of the facts underlying this case and their direct participation in the criminal activity,"[15]

---

[13] *United States v. Bangaroo*, No. 3:15-CR-00174, 2017 WL 3495702, at *3 (M.D. Pa. Aug. 15, 2017) (Mariani, J.), *citing Jiles*, at 197-198 (3d Cir. 1981) (stating that "the first step in determining whether the identity of an informant must be disclosed is to ascertain what need, if any, the defendant has alleged for disclosure", and that this burden to show the need for disclosure is on the defendant, and the "second part of the 'Roviaro test' requires a balancing of the [Defendant's] interest in disclosure against the Government's interest in maintaining the confidentiality of its informant.").

[14] ECF No. 46. (Specifically, in Count 3, Crowder is charged with distribution of a mixture of heroin and carfentanil, that, on June 28, 2017, caused serious bodily injury to JJ after he or she used the substance. Similarly, in Count 7, Crowder is charged with the same, but on June 29, 2017 and the alleged victim was JS. In Count 7 Crowder is charged with the same, but on June 30, 2017 to alleged victim BB. Likewise, in Count 13, on July 7, 2017 to an alleged victim AM.)

[15] ECF No. 131 at 5.

to "establish[] a defense."[16] He further asserts that "there are no safety concerns."[17]

The Government notes, in response, that "the victim-witnesses are drug purchasers potentially called to testify against their suppliers at the Government's request."[18] Further, the Government explains that "at this point in preparing for prosecution, the Government intends to call all individuals identified by their initials in the indictment as witnesses at trial."[19] "Then and there, Mr. Crowder will have ample opportunity to hear about their unique knowledge as to his sale of carfentanil-laced heroin on the charged deliveries and as to his other deliveries within the timeframe of the conspiracy."[20]

On February 21, 2019, I entered an Order in this matter requiring that "the Government is directed to produce *Brady* material to Defendants on a rolling basis as it becomes available"[21] "*Giglio* material shall be disclosed one week prior to a date-certain trial"[22] and "Jencks Act material shall be produced at the discretion of

---

[16] *Id.* at 6.

[17] *Id.* at 7.

[18] ECF No. 139 at 36.

[19] ECF No. 135 at 49.

[20] *Id.*

[21] ECF No. 168 at 5

[22] *Id.* at 8.

the Government,"[23] which has "offered to turn over Jencks Act material forty-eight (48) hours prior to each witness's testimony."[24]

Because the Government has indicated that all alias-identified individuals will be witnesses, and because I have ordered disclosure of each witness's statements as recited in the previous paragraph, I find that this matter is unlike *Rovairo* in which the informer didn't testify at trial and was never identified. "The Roviaro case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt."[25] The case at bar is comparable to any ordinary drug prosecution where the buyer-witness testifies against the defendant-seller at trial and the defendant-seller only learns of the buyer-witness's identity through pre-trial disclosures pursuant to *Brady*, *Giglio*, and Jencks. If none of those documents exist, the defendant learns of the witness's identity when the buyer-witness testifies at trial.

Although presented as a need for disclosure under the *Roviaro* balancing test, given my prior ruling, handed down after the filing of this motion, Crowder's argument now ultimately boils down to one of timing. The Government apparently intends to call each of the four pseudonym identified witnesses at trial. My

---

[23] *Id.*

[24] *Id.* at 4.

[25] *McCray v. State of Ill.*, 386 U.S. 300, 309 (1967).

February 21, 2019 Order compels disclosure of impeachment evidence one week prior to a date-certain trial, together with Jencks Act material in accordance with the Act. The Government may disclose Jencks Act material two-days prior to each witness' testimony.

Nevertheless, even though Defendant Crowder will ultimately learn the identities of these four pseudonymous witnesses, to complete the *Roviaro* balancing test, I will not compel the Government to disclose these identities now, because there is a danger to the four witnesses if their identities are disclosed at this point in time. The public interest weighs in favor of protecting the witnesses and the Government's ability to present its case without threats of harm to the witnesses. The Government proffers as follows:

> Nathan Crowder was arrested on a warrant and charged in Lycoming County for delivering heroin to the individual identified as "AM" in Count 13 of the second superseding indictment. AM was also arrested as a result of his possession of the carfentanil-laced heroin. It is the Government's understanding that Nathan Crowder is aware of the identity of AM. The Lycoming County District Attorney's Office discovered that while the case remained at the state level, Nathan Crowder was informed of AM's identity when AM's name was inadvertently shared with Crowder during a court appearance.
>
> As a result of this discovery, local authorities investigated and were made aware of threatening communication made by Crowder toward AM. Out of concerns for AM's safety, the Assistant District Attorney had AM removed from Lycoming County Prison.[26]

---

[26] ECF No. 139 at 37.

## III. CONCLUSION

In sum, because there have been threatening communications by Defendant Crowder directed to at least one of the four witnesses, and because Crowder will ultimately learn the identity of these witnesses at trial, perhaps within the week preceding trial, the motion for disclosure denied.[27]

---

[27] In point of fact, the Government has been more forthcoming than the motion would suggest. In its brief opposing the motion, the Government has provided the following details, which, although they don't identify the witnesses directly, may aid counsel in identifying the witnesses:

> On June 28, 2017, JJ snorted two bags carfentanil-laced heroin at his home and overdosed. A family member called 911. Responding EMT and police found him unresponsive. JJ spent the day on a ventilator in the hospital before recovering. JJ indicated to police that he purchased 5 bags of what JJ believed to be heroin from Nathan Crowder. JJ identified Crowder as his supplier. JJ provided his phone, which showed months of narcotics-related text messages and phone calls between JJ and Crowder's number, (215) 397-9537.
>
> On June 29, 2017, JS purchased 20 bags of heroin from Nathan Crowder and went to the Susquehanna Hospital in order to use the narcotics. He injected 2 to 3 bags of heroin. Hospital staff found JS and administered emergency care. JS supplied the same known number for Crowder and identified his dealer as "Dreads." Nathan Crowder, during the summer of 2017, wore his hair in dreadlocks.
>
> On June 30, 2017, BB's girlfriend, JM, called 911 as she watched BB and another person begin to overdose. JM allowed police to look at her phone, which BB had used to contact Nathan Crowder's phone. Four calls had been made to Crowder's number, saved in JM's phone as "Cowden." Multiple used baggies were recovered from the scene. JM turned over an additional unused bundle to police. The recovered narcotics match the majority of those recovered from Delaney Farrell's purse when she was discovered dead on July 1, 2017.
>
> On July 7, 2017, AM spoke to Crowder, met him and purchased two bundles of carfentanil-laced heroin. Over the course of the evening and into the morning of July 8, 2017, AM did multiple bags of heroin. When he woke up, he did another bag of what he believed to be heroin and ran an errand. Witnesses who observed that AM was in distress called 911. EMTs and police responded to the area. AM was treated

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

and transported to the hospital. The responding officer recovered the remaining bundle of carfentanil-laced heroin from AM's pocket and placed him under arrest.