UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:17-CR-00291-1 |
| | ) | |
| | ) | (BRANN, D.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| NATHAN CROWDER, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**
Defendant Crowder's Bail Motion (Doc. 279)

## I.   INTRODUCTION

Nathan Crowder, a pre-trial detainee, renews his request for bail based on the COVID-19 Pandemic and his lengthy pre-trial detention.  For the reasons stated in this Memorandum the Motion (Doc. 279) will be denied.

## II.   FACTS AND PROCEDURAL SUMMARY

According to Mr. Crowder's Motion (Doc. 279), he was first indicted on September 28, 2017 and had his initial appearance on October 6, 2017.  He was detained at that time (Doc. 13) without objection.  There have been three superseding indictments (Docs. 22, 46, & 206).  On June 26, 2018, the Government filed a 21 U.S.C. § 851 Notice of the Intent to Seek A Mandatory Minimum Life Sentence for Mr. Crowder if convicted (Doc. 97).  Mr. Crowder filed a motion for bail on October 26, 2018 (Doc. 111), which I denied after a full hearing with a specific finding that the government had established that Mr. Crowder was both a flight risk and a danger

to the community (Doc. 121).  In that Order I found that based on his "prior failure to appear in court as ordered" and his "prior violations of probation, parole or supervised release" that he was both a flight risk and danger to the community.  In that Order I also said, "For reasons stated on the record in court detention is ordered." Today, I reviewed the recording of that hearing to refresh my recollection.  During the hearing I took a recess after receiving evidence and argument.  After the recess I explained on the record that the decision to detain was based on the following items: Crowder has had twenty-two separate contacts with law enforcement; he has never completed a period of supervision without a violation; the current charges took place while he was on bail in another case; and the strength of the Government's case was great.  It should be noted that during the hearing I also discussed the due process ramifications of leaving a person, who is presumed innocent, detained for an extended period without a trial.  At that time his trial was not likely for at least seven more months (June 2019); in other words detention for twenty months.  In its current posture this case will not be tried (Doc. 289, setting a tentative June 2020 trial date) until he has endured just over 32 months of pretrial detention. The Government in its Brief posits that the case will go to trial in October 2020, a duration of 36 months (Doc. 282, p. 22).

Despite this delay of either 32 or 36 months, the case has not languished. There have been seventeen (17) separate motions filed by Mr. Crowder, all of which

were briefed, argued, and decided by memorandum opinion and order.  There have been twelve (12) motions for continuance of trial, some by Mr. Crowder, some opposed by him.  In every case the trial judge found that the delay was excluded under the Speedy Trial Act.  Crowder does not challenge the propriety of any of those decisions.

In this motion (Doc. 279) Crowder raises the specter of the COVID-19 Pandemic and its effect on the Clinton County Prison where he is housed. Specifically, he argues that the current locked down conditions "limit the ability of Mr. Crowder to review discovery" and "deprives Mr. Crowder of an opportunity to unhampered preparation of his defense" for a trial expected to last one month. (Doc. 279, p. 4, ¶¶ 27, 35).  He does not allege any medical condition that puts him at any greater risk than any other person during this pandemic.  In his Brief in Support of this Bail Motion (Doc. 280) Mr. Crowder raises four issues to support his request for bail:

> 1) "…the current accommodations at the Clinton County Correctional Facility severely constrain access to legal counsel" (p. 7);
>
> 2) "…this case is complex, with trial expected to last a month, and requires much interaction between Mr. Crowder and counsel in order to effectively prepare for trial." (p. 8);
>
> 3) … Mr. Crowder is not charged with a crime of violence (p. 8);

4) having been detained for more than 2 ½ years with additional delay likely because of the pandemic his substantive due process rights are implicated and outweigh any flight risk (citing cases[1]) (p. 8-9); and,

5) "…Mr. Crowder was born and raised in Philadelphia.  He has significant lifetime ties to that area…" that would with a "panoply of conditions" fully protect the safety of the community. (p. 9).

Looking at the Pretrial Services Report dated October 14, 2017, and Government Exhibit #1, Lycoming County Court Cases Summary (from the November 27, 2019 Bail Hearing) it appears that during this extended period of detention Mr. Crowder may have been serving some portion of one or two county criminal sentences. The facts are not clear on this record.  However, there is also nothing in this record to indicate that Mr. Crowder was not available for trial while serving one or more county sentences.

In its Brief in Opposition (Doc. 282) the government argues that the detention here does not raise constitutional concerns (Doc. 282, p. 3, citing cases).[2]  The

---

[1] *See United States v. Gatto*, 750 F. Supp 664 (D. N.J. 1990) (court order release of defendants because of excessive delay [21 months until trial and a possible 6 months to one year trial]); *United States v. Vastola*, 652 F. Supp. 1446 (D. N.J. 1987) (defendants were expected to be in jail eighteen months without a determination of guilt or innocence and because of the heightened infringement of defendant's liberty interest resulting from the enlargement of time, the court held that continued detention would offend due process.); *United States v. Chen*, 820 F. Supp. 1205, 1209-11 (N.D. Cal. 1992) (court orders release because continued detention would present due process problem where defendants already detained for one year and a specific finding of no dangerousness to the community).

[2] While defendant draws the Court's attention to particular examples where release was ordered out of Constitutional concern, lengthy periods of pretrial detention are regularly upheld as inoffensive to due process. *See U.S. v. Jones*, 143 F.Supp.3d 78

government also argues that the COVID-19 Pandemic is not a proper reason to release because adequate steps have been taken to protect inmates generally and Clinton County inmates specifically, noting that as of March 20, 2020 Clinton County "reported no positive COVID-19 cases among their inmate populations." Doc. 282, p. 7). The government specifically argues that:

1. Reconsideration of the Court's Initial Detention Order (because of COVID-19) is Unwarranted (citing cases, *see* f.n. 15 at p. 12; ("The existence of the present pandemic, without more, is not tantamount to a 'get out of jail free' card."); and,

2. Even Upon Reconsideration, Detention Remains Necessary Under § 3142(g) because:
   a. There is a presumption of Detention for the Instant Offense;
   b. The Defendant remains a flight risk[3];
   c. The Defendant Remains a Danger to the Community[4];
   d. COVID-19 does not provide a compelling reason to order

   Defendant's temporary release from pretrial detention; and,

3. Any release should be conditioned on a health screening.

---

(W.D.N.Y. 2015) (Defendant's 32 months of pre-trial detention on charges of conspiracy to commit wire fraud, wire fraud, conspiracy to engage in money laundering, and money laundering was not constitutionally excessive under Due Process Clause.); *United States v. Pirk*, 274 F.Supp.3d 138 (W.D.N.Y 2015) (Defendant's pretrial detention of approximately 22 months was not constitutionally excessive, as would violate his due process rights).

[3] "It is a fanciful notion that the Eastern District of Pennsylvania, and specifically, the City of Philadelphia should, could, or would now agree to shoulder the burden of keeping track of the defendant on pretrial release." (Doc. 82, p. 16)

[4] "Similarly, nothing about the COVID-19 Pandemic reduces the defendant's danger to others. (Doc. 82, pp. 16-17). The defendant, previously convicted of drug dealing, and arrested twice in 2017 for drug-dealing, would be sprung free into a community ripe for exploitation." (Doc. 82, p. 18)

In his Sur-Reply Brief (Doc. 288) Crowder argues that "the Government's objection to release is predictable" because the Government "routinely, and as a matter of course, objects to release in virtually three out of every four cases, regardless of circumstances" citing a statistical table (Def.'s Ex. A) showing that AUSA's in the Middle District recommend detention 72% of the time. (Doc. 288, p. 1). In this brief, Mr. Crowder makes the following arguments:

1. the Government minimizes the threat to inmates of the COVID-19 global pandemic… and contradicts the realities of institutional confinement and the consensus of public health experts (citing general studies and pronouncements) (Doc. 288, p. 2). Mr. Crowder cites to the opinion of Judge Jones in *Thakker et al. v. Doll*, et al., No. 1:20-CR-480 (M.D.P.A. March 31, 2020), ECF No. 47. Mr. Crowder also attaches a generic but earnest affidavit by Brie Williams, M.D., dated March 27, 2020, indicating that it is available for use "in support of any defendant seeking release from custody during the COVID-19 pandemic, so long as such release does not jeopardize public safety and the inmate can be released to a residence in which the inmate can comply with CDC social distancing guidelines." (Doc. 288, Ex. B, para. 4);

2. The Government "even in this extraordinary global crisis, invokes one of its stalwart darlings: the seemingly impervious rebuttable presumption of flight and danger to the community. That dogmatic reliance is untenable." (Doc. 288, p. 6);
   a. "Next, in invoking the presumption, the Government goes to great lengths to stoke fears to this Court if Mr. Crowder is released. (Doc. 282, at 15-19). Despite such fervor, such concerns are fictitious." (Doc. 288, p. 7);

3. "Finally (sic), the Government naturally minimizes or even trivializes Mr. Crowder's due process concerns impacted by COVID-19 and his already lengthy pre-trial detention of almost three years." (Doc. 288, p. 9); and,

4. Finally, the calculus that must be applied to resolve the issue of whether detention remains appropriate, or even constitutional, constantly changes in direct proportion and relationship to the amount of time that has passed. *See United States v. Gallo*, 653 F. Supp. 320, 339 (E.D.N.Y. 1986).

In his papers, Mr. Crowder also argues that the presumption of detention in drug cases is "dogmatic" and "untenable." (Doc. 288, p. 6). I respectfully disagree.

The rebuttable presumption in 18 U.S.C. § 3142(e)(3) reflects a Congressional finding that drug trafficking is a danger to the community and drug traffickers pose special flight risks.[5] Regarding danger to the community, that finding is born out in the current statistics. In the last several years, there have been thousands of drug overdose deaths in Pennsylvania: 4,516 deaths in 2016; 5,398 deaths in 2017; 4,422 deaths in 2018; and 3,811 deaths in 2019.[6] In 2018, Pennsylvania had the fourth highest rate of death due to drug overdose (36.1 per 100,000).[7] According to a DEA report, in 2018, twelve (12) people in Pennsylvania died each day due to drug-related overdose.[8] Pennsylvania has not been alone in the opioid crisis, as the death toll

---

[5] *U.S. v. Strong*, 775 F.2d 504, 507 (3d Cir. 1985).

[6] Estimated Accidental and Undetermined Drug Overdose Deaths 2012 – Current, opendataPA, available at https://data.pa.gov/Opioid-Related/Estimated-Accidental-and-Undetermined-Drug-Overdos/m3mg-va8e. (last accessed 04/15/20).

[7] Drug Overdose Deaths, https://www.cdc.gov/drugoverdose/data/statedeaths.html . (last accessed 04/15/20). (last accessed 04/15/20).

[8] DEA Report available at: https://www.dea.gov/sites/default/files/2019-10/PRB%20FINAL%20--%20BUL-132-19%20Drug-Related%20Overdose%20Deaths%20in%20Pennsylvania%2C%202018.pdf . (Last accessed 04/13/20).

across the United States has been alarming. According to the CDC's national data, in the United States, there were 67,367 drug overdose deaths in 2018 and 70,699 deaths in 2017. The recent increase in drug overdose deaths has largely been attributed to opioid use – 47,600 of the 2017 overdose deaths involved opioids.[9]  In Pennsylvania, the presence of an opioid was reported in 84% of overdose deaths in 2017 and 82% of overdose deaths in 2018.[10]   In 2018, approximately 4,491 drug-related overdose deaths were reported by Pennsylvania coroners and medical examiners.[11] This means that in 2018, 13.7 people in Pennsylvania died of a drug-related overdose each day. By comparison, as of noon today (April 15, 2020) there have been six-hundred-forty-seven (647) COVID-19 deaths in Pennsylvania in all of 2020.[12]   That is six per day from COVID-19 and thirteen plus per day from drug overdoses.

---

[9] From the National Institute on Drug Abuse (cited by the CDC) https://www.drugabuse.gov/opioid-summaries-by-state/pennsylvania-opioid-summary  (Last accessed 04/13/20).

[10] See DEA Report (from footnote 8) . (Last accessed 04/13/20).

[11] https://www.overdosefreepa.pitt.edu/know-the-facts/death-data-overview/ . (Last accessed 04/13/20).

[12] https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last accessed 04/13/20).

In summary, Mr. Crowder is subject to the presumption of detention, I have previously made a finding of both flight risk and dangerousness, and the proffered details of his release plan are sparse. With these facts in mind I now turn to the two arguments Mr. Crowder raises: the need for release because of the COVID-19 Pandemic and release because of delay in violation of due process.

## III.   The Impact of the COVID-19 Pandemic on a Bail Decision

The question presented by this motion requires an analysis of the Bail Reform Act under pandemic/emergency conditions pursuant to 18 U.S.C. § 3142(i). Early on in the COVID-19 pandemic our Court addressed the application of 3142(i) to these extraordinary times. *See Thakker v. Doll*, 1:20-cv-0480 (M.D. Pa. March 31, 2020) (releasing fourteen civil immigration detainees based on the COVID-19 pandemic). Section 3142(i) of Title 18 of the United States Code provides, in relevant part that:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

The language of the *Thakker* case is strong and persuasive in the civil detention context. Other Courts have agreed that COVID-19 Pandemic requires

release of Civil Immigration Detainees.[13]   However, to apply this reasoning to prisons and jails across the board in all criminal cases is a much different matter. This is a decision about bail during a pandemic. Thus, in addition to the factors considered elsewhere in this Memorandum, I will also address the circumstances unique to bail decisions during the COVID-19 pandemic.

There have been some extraordinary efforts around Pennsylvania to address the risks associated with the COVID-19 Pandemic.

The Pennsylvania Supreme Court issued an Order on April 3, 2020 directing each county president judge to work with the relevant stakeholders to fashion localized plans for dealing with COVID-19 in county jails.

> We DIRECT the President Judges of each judicial district to coordinate with relevant county stakeholders to ensure that the county correctional institutions in their districts address the threat of COVID-19, applying the recommendations of public health officials, including the CDC's Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020).2 If utilization of public health best practices is not feasible due to the population of the county correctional institutions, President Judges should consult with relevant county stakeholders to identify individuals and/or classes of incarcerated persons for potential release or transfer to reduce the current and future populations of the institutions during this health crisis with careful regard for the safety of victims and their communities in general, with awareness of the statutory rights of victims, and with due consideration given to public health concerns related to inmates who may have contracted COVID-19. Moreover, consistent with these above considerations, President Judges are to

---

[13] *Basank v. Decker*, No. 20 Civ. 2518 AT, 2020 WL 1481503 (S.D.N.Y. March 26, 2020).

undertake efforts to limit the introduction of new inmates into the county prison system.[14]

On April 10, 2020, Pennsylvania Governor Tom Wolf ordered Department of Corrections officials to establish a Temporary Program to Reprieve Sentences of Incarceration to help aid the department in the transfer of qualifying individuals to community corrections facilities or home confinement amid the COVID-19 pandemic.

The Temporary Program to Reprieve Sentences of Incarceration Program only applies to state prison inmates who have been identified as being non-violent and who otherwise would be eligible for release within the next nine months or who are considered at high risk for complications of coronavirus and are within twelve months of their release.[15]

The present knowledge of COVID-19 is amply documented by the references set forth in Mr. Crowder's Motion and Briefs. Virtually every sector of public life has been affected, with both private and governmental operations being scaled back to a minimum or shuttered altogether. Experts tell us that the rate of infections has yet to peak in the United States, so conditions are expected to worsen.

---

[14] *In Re: The Petition Of The Pennsylvania Prison Society*, No. 70-MM-2020, slip op. at pp. 2-3 (Pa. April 3, 2020) (*per curiam*).

[15] The Governor's Order regarding the state prisons can be found at: https://www.governor.pa.gov/wp-content/uploads/2020/04/20200410-GOV-DOC-reprieve-release-order-COVID-19.pdf   (Last accessed 04/13/20).

"The Court is mindful that it bears a fiduciary responsibility to that those that are detained in jails and prisons. The incarcerated look to the Courts for protection of their health, welfare and personal rights in general. However, the Courts are not on the front line. That space is rightly occupied by corrections officials and their administration."[16] On this record, there is no suggestion of mistreatment, dereliction of duty, mismanagement, or other concern. To the contrary, the Government's Opposition speaks with specificity about the absence of an effect of the virus on Mr. Crowder, whereas his Motion merely raises general concerns that are true for every person who is incarcerated.

I agree with the Courts that have held that a defendant is not entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation. *United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895 *3 (D. Kan., Mar. 25, 2020). While the court remains sympathetic to the generalized risk regarding the possible complications caused by the COVID-19 virus "[s]uch speculation does not constitute a 'compelling reason' for temporary release." *United States v. Loveings*, Cr. No. 20-51, 2020 WL 1501859 *3 (W.D. Pa. Mar. 30, 2020).

---

[16] *United States v. Williams*, No. PWG-13-544, 2020 WL 1434130 (slip copy) (D. Md. Mar. 24, 2020).

Mr. Crowder has not alleged any special health concerns.[17]  He is 31 years old with no known health conditions. The Court is not aware of any federal detainee diagnosed with COVID-19 at Clinton County Prison, where Mr. Crowder is currently held. *See* Standing Order 20-5 (requiring each detention center to promptly notify the U.S. Marshal of any federal detainee in medical isolation or quarantine).

---

[17] Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." *United States v. Lee*, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (*citing United States v. Cox*, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); *United States v. Green*, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); *United States v. Steward*, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); *United States v. Hamilton*, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); *see also United States v. Clark*, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." *United States of Am. v. Keith Kennedy*, No. 18-20315, 2020 WL 1493481, at *4 (E.D. Mich. Mar. 27, 2020), *reconsideration denied sub nom. United States v. Kennedy*, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

*United States of America v. Raia*, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Based on the evidence on the public record at this time, there are no confirmed cases of COVID-19 in the Clinton County prison.  As of April 14, 2020, at 12:00 p.m. in Clinton County where the prison is located there are only eight confirmed corona virus cases and no deaths.[18]  While these numbers are not guaranteed into the future, they do not suggest an immediate and unavoidable risk.  However, in Philadelphia County, where Crowder seeks to return if released, there are 7,347 confirmed corona virus cases and 132 deaths.[19]

The bail motion indicates that being detained "denies Mr. Crowder of an opportunity to unhampered preparation of his defense." (Doc. 279, ¶ 35).  There is nothing in this record to indicate how the "unhampered preparation of his defense" will be accomplished in the current climate, or how releasing him to Philadelphia will aid in his preparation with a lawyer in Williamsport.  Mr. Crowder speculates that if Clinton County Prison has a positive COVID-19 result it "will likely go on a total lockdown and/or implement other restrictive measures." (Doc. 279, ¶29).  I am unwilling to make a ruling on such speculation.

All live "in court proceedings" in the Middle District of Pennsylvania have been stayed from March 16, 2020 to at least May 31, 2020. Standing Orders 20-01 & 20-10.  Mr. Crowder has indicated that he expects to go to trial.  The case is

---

[18] https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last accessed April 14, 2020 at 4:20 p.m.)
[19] *Id.*

currently set for a one month trial on June 1, 2020 (Doc. 289) but it is unlikely that the case will be tried in June, or even this summer.

In summary, the COVID-19 Pandemic does not present a "compelling reason" to release Mr. Crowder at this time.

## IV. DUE PROCESS VIOLATION FOR LENGTHY TRIAL DELAY WITHOUT BAIL.

This issue requires the Court to balance the provisions of the Bail Reform Act,[20] the Speedy Trial Act,[21] the Sixth Amendment guarantee of a "speedy and public trial," and the Fifth Amendment promise of procedural due process to determine if detaining this defendant any longer without bail amounts to a due process violation.   The Bail Reform Act creates a rebuttable presumption of detention in certain cases and does not address the issue of delay.  The Speedy Trial Act requires criminal cases to be brought to trial within seventy days unless the court finds the "ends of justice" require delay.[22]  The Sixth Amendment speedy trial cases require a four-part analysis of the reasons for delay. The Due Process cases have primarily been in the civil immigration detention context.  The Courts that have

---

[20] 18 U.S.C. § 3142 *et seq.*

[21] 18 U.S.C. § 3161 *et seq.*

[22] 18 U.S.C. § 3164 extends the time for trial from seventy to ninety days for persons detained solely because they are awaiting trial.  Further, 18 U.S.C. § 3173 specifically states that the Act does not bar a Sixth Amendment claim (In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, …).

addressed this issue have not set a bright line to determine when detention is so long that it violates procedural due process.  Instead the question is left to the individual judge to determine on a case by case basis.

A.   SPEEDY TRIAL ACT ANALYSIS

The Speedy Trial Act (the "Act") mandates that a criminal defendant be brought to trial within seventy days from the filing date (and making public) of the information or indictment or the defendant's initial appearance, which occurs later. 18 U.S.C. § 3161(c)(1). The Act excludes time attributable to certain events from computation of the seventy-day statutory period. *See e.g.,* 18 U.S.C. § 3161(h)(1)(A)-(h). Of particular note is § 3161(h)(1)(D), which excludes: "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Additionally, up to thirty days' time is excluded during which "any proceeding concerning the defendant is actually under advisement by the court." § 3161(h)(1)(H).  *See United States v. Foley*, No. 3:18-CR-00333-(VLB), 2020 WL 423342, at *2 (D. Conn. Jan. 27, 2020) (Appendix) for an example of a chart that calculates the delay under the Speedy Trial Act.  There is no Speedy Trial Act analysis by the parties in this case.

B.    BAIL REFORM ACT ANALYSIS

The Eighth Amendment states that "Excessive bail shall not be required."  If excessive bail cannot be required what about no bail?  In *U.S. v. Accetturo*, 783 F.2d 382 (3d Cir. 1986) the Court held that the Bail Reform Act is not unconstitutional by omitting probable duration of pretrial incarceration from its enumeration of factors to be considered in initial detention determination.  The Court also said that "The Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (1983), not the preventive detention provisions of the Bail Reform Act, is the vehicle chosen by Congress to regulate the length of pretrial delays for both detained and undetained defendants. Congress' choice in this matter is clear from the legislative history of the Bail Reform Act." *Citing United States v. Colombo*, 777 F.2d 96 (2nd Cir.1985).  In *Accetturo*, Judge Sloviter dissented in part "because I believe the court shirks its obligation to come to grips with the difficult issue presented by the extraordinary lengthy pretrial detention of these defendants, a detention that at a minimum will be six months. To decide, as the majority does, that a consideration of due process for pretrial detainees "awaiting distant trials" is "better met farther down the procedural road", majority op. at 388 (emphasis added), when these individuals have already been detained for more than three months, is to deny effective consideration of that issue at any time." *Accetturo*, *supra* at 392.

Later that same year in *U.S. v. Perry*, 788 F.2d 100 (3d Cir. 1986) the Court held that the rebuttable presumption of the Bail Reform Act (that no condition or combination of conditions will reasonably assure the safety of the community when a defendant is charged with serious drug violation) does not violate Eighth Amendment, substantive or procedural due process, equal protection or Sixth Amendment rights.

In *U.S. v. Salerno*, 481 U.S. 739 (1987), the Supreme Court agreed and held that (1) The Bail Reform Act authorization of pretrial detention on basis of future dangerousness constituted permissible regulation that did not violate substantive due process, and was not impermissible punishment before trial; (2) The Due Process Clause did not categorically prohibit pretrial detention imposed as regulatory measure on ground of community danger, without regard to duration of detention; and, (3) The Bail Reform Act authorization of pretrial detention on ground of future dangerousness was not facially unconstitutional as violative of the Eighth Amendment.  The Court left for another day the question of a lengthy detention as a due process violation.  "We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Salerno, Id*. at 481 U.S. 747.

C.      6TH AMENDMENT SPEEDY TRIAL ANALYSIS

In *Barker v. Wingo*, 407 U.S. 514 (1972), the U.S. Supreme Court set forth a four-factor balancing test for courts to determine whether a defendant's Sixth Amendment right to a speedy trial was violated. The four factors are: "[l]ength of delay, the reason for the delay, the defendant's assertion of [her] right, and prejudice to the defendant."   As the Supreme Court has recognized, these factors have no "talismanic qualities", and none is "either a necessary or sufficient condition to the finding of a deprivation of the right to speedy trial." *Barker*, 407 U.S. at 533. Rather, they are "related factors" that "must be considered together with such other circumstances as may be relevant." Id.

The constitutional requirements of the Sixth Amendment remain a basis to attack pretrial delay, even if a Defendant's statutory rights under the Speed Trial Act were not violated. 18 U.S.C § 3173.

So then, how long is too long?

D.      CIVIL DETENTION IN IMMIGRATION CASES

Cases involving immigration detention are plentiful and offer some guidance as to a permissible length of detention.

> For the past fifteen years federal courts have frequently been tasked with the responsibility of defining the contours of the due process protections afforded to aliens who are detained for extended periods of time while awaiting the completion of immigration removal proceedings and removal from the United States. These cases have come before the courts in a variety of factual settings, against the

backdrop of a statutory immigration system which often called for mandatory detention of classes of aliens facing removal from the United States.

*Alonso v. Lowe*, No. 1:17-CV-1068, 2017 WL 4401894, at *1 (M.D. Pa. July 27, 2017), report and recommendation adopted, No. 1:17-CV-1068, 2017 WL 4387113 (M.D. Pa. Oct. 3, 2017).

In 2000, Judge Rambo held that continued detention, after two years, of an alien who was subject to a final order of deportation violated his substantive due process rights where his country of origin refused to allow his return. *Kay v. Reno*, 94 F. Supp. 2d 546 (M.D. Pa. 2000). Judges Caldwell and McClure disagreed, at least in part, finding that the length of time alone was not a violation, as long as periodic review occurred. *See Michel v. I.N.S*, 119 F. Supp.2d 485 (M.D. Pa. 2000) (collecting cases).

In 2004, then District Judge Vanaskie found that detention for four years without bail (of an alien appealing a removal order) violated due process. *Oyedeji v. Ashcroft*, 332 F. Supp. 2d 747 (M.D. PA 2004).

E.    PA MIDDLE DISTRICT DUE PROCESS CASE

A summary of the criminal case, *U.S. v. Thompson*, 4:16-cr-00019-MWB-19 is in order. On January 21, 2016 Randy Thompson was arrested on a criminal complaint and ordered detained by the Magistrate Judge pending a preliminary hearing [See Docket 4:16-MJ-0009 (Doc. 12)]. On February 11, 2016 a superseding

indictment was filed at 4:16-cr-00019-MWB-19, naming twenty-seven defendants, including Thompson.   On February 12, 2016 Thompson was arraigned and continued detention was ordered by the Magistrate Judge.   On April 15, 2016 Thompson filed a motion for bail (Doc. 231), which the District Judge denied (Doc. 258) on May 24, 2016.   Thompson sought review of that decision in the Circuit (Doc. 266), but on August 8, 2016, the Circuit denied his Motion to be released from custody. (Doc. 298).   After another superseding indictment and the denial of a motion to sever his case from the other twenty-six (26) defendants, Thompson filed a second Motion for Bail on August 16, 2017 (Doc. 707).   That motion was referred to the Magistrate Judge, and after hearing, denied on October 3, 2017 (Doc. 724). Thompson filed another Motion for Bail on December 22, 2017 (Doc. 786).   That Motion was also referred to the Magistrate Judge.   After hearing on January 8, 2018, the Magistrate Judge ordered Thompson released on bail because of the inordinate delay but stayed the order for forty-eight (48) hours to permit the government to appeal the release decision (Doc. 794).   The government did appeal, and on January 17, 2018, after hearing, the District Judge revoked the bail decision of the Magistrate Judge and ordered Thompson's continued detention (Doc. 809).   The District Judge explained his decision in detail by Memorandum (Doc. 808), discussing the presumption of detention under the dangerousness factor and the extended delays in bringing the case to trial.   At that time Thompson had been in custody for two years,

four months, and thirteen days.  The District Judge found that the delay was not a constitutional violation, in part because a date certain was set for trial.  Thompson would have been detained for two years, seven months and twenty-seven days by the start of his trial.[23]

Recognizing that the facts of each case and the delays are unique, the *Thompson* case suggests that, at least in this vicinage, 32 months in pre-trial detention is not, *per se*, a due process violation.  *U.S. v. Thompson*, 2018 WL 2341713 (M.D.Pa 2018).

F.    CONFLICT BETWEEN 6TH AMENDMENT AND 5TH AMENDMENT CASES

This issue raises two questions, not briefed by the parties in this Bail Motion that need to be resolved if bail were to be granted on due process grounds.

---

[23] On September 6, 2019, the first day of his trial, Thompson plead guilty and was released on bail pending sentencing.  At that time, he had been in custody for two years, seven months and twenty-seven days.  On January 22, 2019 a warrant was issued for Thompson's arrest for violating the terms of his bail (Doc. 1277).  On March 7, 2019 Thompson was brought to court and detained on the violation (Doc. 1339).  On March 28, 2019 Thompson was sentenced to time served and three years of supervised release (Doc. 1372).   Although Thompson was facing a mandatory minimum of ten years and possible life sentence when first detained, he eventually served only slightly less than three years.  This outcome was not, of course, guaranteed - but it is not unusual, and should therefore be considered when applying the presumption under 18 U.S.C. § 3142(e)(3).

**Question One:**

Does the case law require that the length of trial delay is governed only by the Sixth Amendment, or can a Fifth Amendment due process analysis also be considered?

After brief research I can find only one Third Circuit case that discusses this issue, and then only indirectly.

> Last year, though, the Supreme Court held unanimously that the Sixth Amendment [right to a speedy trial] provides no guarantee of speedy sentencing. *Betterman v. Montana*, ⸺ U.S. ⸺, 136 S.Ct. 1609, 194 L.Ed.2d 723 (2016). However, the Court expressly left open the possibility that due process protects against improper delays in sentencing, noting that "[a]fter conviction, a defendant's due process right to liberty, while diminished, is still present. He retains an interest in a sentencing proceeding that is fundamentally fair." *Id*. at 1617. The Court did not set forth what a due process speedy sentencing claim might consist of, although it suggested that the Barker factors might be "[r]elevant considerations." *Id.* at 1618 n.12.

*United States v. James*, 712 F. App'x 154, 161 (3d Cir. 2017).

**Question Two:**

If a due process analysis is appropriate, does a finding of "danger to the community" extend the permissible time for pre-trial detention without bail indefinitely?

## V.   CONCLUSION

For the reasons outlined in this memorandum decision, Mr. Crowder's request for bail based upon the COVID-19 Pandemic is denied.  If Counsel believes that continued denial of bail raises a due process concern, he is invited to file a new motion and brief on the due process issue.

An appropriate order will follow.

Date: April 16, 2020                              BY THE COURT

<u>*s/ William I. Arbuckle*</u>
William I. Arbuckle
U.S. Magistrate Judge